# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

WILLIAM GREGORY THOMAS,

    Petitioner,

v.                                          Case No.: 3:17-cv-661-TJC-PDB

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

    Respondents.

## ORDER

### I. Status

On June 9, 2017, Petitioner, through counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and a Memorandum of Law (Doc. 2). In 1994, after entering a plea of guilty, Petitioner was sentenced to life imprisonment for the murder of his mother.[1] He challenges his conviction on one ground: he was denied due process because the state withheld "critical information which would have provided a basis for excluding the testimony of jailhouse informants and a means of discrediting all aspects of the state['s]

---

[1] On a separate conviction for the murder of his wife, Petitioner received the death penalty. See State v. Thomas, No. 1993-CF-5394 (Fla. 4th Cir. Ct.).

case." Doc. 1 at 6 [2] (capitalization and emphasis omitted). The "critical information" relates to two individuals who were incarcerated with Petitioner before his trial in the wife-murder case and guilty plea in the mother-murder case: Ahmad Dixon, who testified against Petitioner at his trial for his wife's murder; and Adrian Cason, a potential witness. Petitioner acknowledges that at the time he filed the Petition, he had not previously raised this claim in any state court. Id. at 26.

On January 16, 2018, Respondents filed a Response (Doc. 10), arguing the Petition should be dismissed as untimely, the claim is procedurally defaulted, and the claim lacks merit. In June 2018, Petitioner filed his first state court postconviction motion raising the same claim he raises in the Petition.[3] See State v. Thomas, No. 16-1993-CF-5393 (Fla. 4th Cir. Ct.).[4] The state court denied the motion on March 25, 2019. See id. Petitioner did not file an appeal of the state court's denial. See id. On December 28, 2022, Petitioner, through

---

[2] For all documents filed in this case, the Court cites to the page numbers as assigned by the Court's electronic case filing system.

[3] Petitioner filed the Rule 3.850 motion pro se, but it is nearly identical to the Memorandum of Law filed by his counsel in this case (Doc. 2).

[4] The Court takes judicial notice of Petitioner's state court dockets. See, e.g., Paez v. Sec'y, Fla. Dep't of Corr., 947 F.3d 649, 651 (11th Cir. 2020) (per curiam) (finding the district court properly took judicial notice of the petitioner's state court dockets).

his substitute counsel,[5] filed a Notice in this case (Doc. 28), advising that he would not file a reply, but would instead rely on the claim and allegations as stated in his Petition and Memorandum.

Shortly thereafter, on January 9, 2023, Respondents filed a Motion to Dismiss (Doc. 29). Respondents indicate that "[t]he State now renews its untimeliness argument made in its answer in a separate motion to dismiss," and it "wishes to detail the procedural history in state and federal court and seeks to clarify the due date for the federal habeas petition." Id. at 6-7. The state also addresses its procedural default argument, id. at 10, and then claims that this Court has "needlessly prolonged" this case for years and should dismiss the "petition as untimely immediately," id. at 11. The Court entered an order advising that Respondents' motion was essentially a supplemental response that was filed without the Court's leave, but that the Court would consider it when addressing the Petition. See Order (Doc. 30).

The case is ripe for review.

## II.    Relevant Procedural History

In 1993, the state of Florida charged Petitioner in two separate cases: (1) for burglary and the kidnapping and murder of his wife, see Thomas, No. 1993-CF-5394; and (2) for the murder of his mother, see Thomas, No. 1993-CF-5393.

---

[5] Petitioner's previously appointed federal habeas counsel for this case passed away in 2022. See Order (Doc. 22).

3

He proceeded to a jury trial in the wife-murder case, at the conclusion of which the jury found him guilty and recommended the death sentence. Before he was sentenced in the wife-murder case, in July 1994, Petitioner entered into a negotiated plea agreement with the state, in which he pled guilty to the murder of his mother in exchange for the state's recommendation that he be sentenced to life (instead of seeking the death penalty) on that charge. See Doc. 10-1 at 6-32. As part of the plea agreement, Petitioner agreed to waive his right to file a direct appeal or collateral challenge to the convictions in both cases, but he specifically reserved his right to appeal any matters relating to the sentencing in either case. See Doc. 10-1 at 7-8, 11; see also Thomas v. Att'y Gen., 992 F.3d 1162, 1168 (11th Cir. 2021).

As noted above, more than two decades later, in June 2018, while the instant case was pending in this Court, Petitioner filed in the state court a pro se postconviction motion pursuant to Florida Rule of Criminal Procedure 3.850 in the mother-murder case. See Thomas, No. 1993-CF-5393. In the motion, he raised the same claim as he raises in the instant Petition. The state court denied the motion, finding as follows:

> Initially, this Court notes that while this Motion is filed outside the two-year time limitation of Rule 3.850, Defendant raises claims of newly discovered evidence. Claims of newly discovered evidence may be raised outside the two-year time limitation for Rule 3.850 motions when the facts upon which the claim is predicated "were unknown to the movant or the

4

movant's attorney and could not have been ascertained by the exercise of due diligence and the claim is made within 2 years of the time the new facts were or could have been discovered with the exercise of due diligence." Fla. R. Crim. P. 3.850(b)(l).

Specifically, in the instant Motion, Defendant avers the State committed Brady[6] and Giglio[7] violations by failing to disclose deals made with jail informants, Ahmad Dixon and Adrian Cason, the testimony of whom the State cited within its recitation of the factual basis for Defendant's plea. On January 7, 2019, this Court ordered the State to respond to Defendant's allegations. On March 8, 2019, the State filed its Response.

To obtain a new trial based on newly discovered evidence following a plea, a defendant must demonstrate that: (1) "the evidence must not have been known to the trial court, the party, or counsel at the time of the plea and it must appear that the defendant or defense counsel could not have known of it by the use of due diligence"; and (2) there is reasonable probability that but for the newly discovered evidence, the defendant would not have entered a plea of guilty but would rather have insisted on going to trial. Long v. State, 183 So. 3d 342, 346 (Fla. 2016).

To establish a Brady claim, Defendant must show: (1) the evidence was favorable to him for exculpatory or impeachment purposes; (2) the State willfully or inadvertently suppressed the evidence; and (3) Defendant was prejudiced by the suppression. Taylor v. State, 848 So. 2d 410,412 (Fla. 1st DCA 2003). In the context of a plea, Defendant must allege that but for the State's suppression, he would not have

---

[6] Brady v. Maryland, 373 U.S. 83 (1963).

[7] Giglio v. United States, 405 U.S. 150 (1972).

entered the plea and would have instead proceeded to trial. Id. However, "[t]here is no Brady violation where the information is equally accessible to the defense and the prosecution, or where the defense either had the information or could have obtained it through the exercise of reasonable diligence." Freeman v. State, 761 So. 2d 1055, 1062 (Fla. 2000) (quoting Provenzano v. State, 616 So. 2d 428, 430 (Fla. 1993)).

To prove a Giglio violation, Defendant must show that false testimony was given, the State knew the testimony was false, and the Statement was material. Guzman v. State, 868 So. 2d 498, 505 (Fla. 2004). To show materiality, there must be "a reasonable probability that the false evidence may have affected the judgment of the jury." Id. (citation omitted).

*a. Dixon*

Defendant asserts the State violated Brady by failing to disclose Dixon's arrest record and violated Giglio by failing to correct his deposition testimony that he faced no state charges.[FN] This information was allegedly "newly discovered" in June 2016, when Defendant's federal habeas attorney went to the Jacksonville Sheriff's Office and requested Dixon's criminal history, which showed state charges were filed in 1993, dropped, refiled in 1994, and then dropped again.

> [FN] Defendant also alleges Dixon testified at trial that he faced no state charges. However, there was no trial in this case for which Dixon could have testified.

This Court finds this claim does not qualify as newly discovered evidence because the facts underlying this claim could have been discovered earlier through the exercise of due diligence. As

6

> Defendant was incarcerated with Dixon, he was aware Dixon was facing charges. Dixon's arrest record could have been obtained as early as 1993 and 1994 when the charges were levied and dropped with the exercise of due diligence, and certainly more than two years before the instant Motion was filed. Thus, this claim meets no exception to the two-year time limitation of Rule 3.850 and is untimely. To this point, this Court notes that Defendant raised the same claim within a Rule 3.851 motion in his other case of 16-1993-CF-0[5]394-AXXX-MA, which this Court summarily denied on this basis, and the Florida Supreme Court affirmed that denial. Thomas v. State, 260 So. 3d 226, 227 (Fla. 2018).[8]
>
> Additionally, this Court finds this evidence was equally accessible to the State and defense and could have been obtained by the defense using due diligence. As such, this Court finds there can be no Brady violation. See Freeman, 761 So. 2d at 1062. Moreover, this Court finds no reasonable probability Defendant would have foregone his negotiated plea in order to proceed to trial based on this information. Lastly, because Defendant did not proceed to trial, there is no probability this evidence may have affected the judgment of the jury as required to fulfill a Giglio

---

[8] Petitioner's state court postconviction counsel in the wife-murder case filed a second successive Rule 3.851 motion raising the same claims. See Thomas, 260 So. 3d at 227. The Florida Supreme Court found the claims were procedurally barred, "as this evidence is not newly discovered," because "[t]he record establishes that the information in his claims could have been discovered at an earlier date through the use of due diligence." Id. Alternatively, the court found the claims were "without merit." Id. at 227-28.

On the same day Petitioner filed the instant Petition in this Court, he also filed, through counsel, a successive habeas petition stemming from the wife-murder case, in which he raised a similar claim as the claim raised in the Petition. See Thomas v. Sec'y, Fla. Dep't of Corrs., No. 3:17-cv-662-TJC-JBT (M.D. Fla. June 9, 2017). The Court dismissed the petition as second or successive and denied Petitioner's request for reconsideration. See Orders (Docs. 40, 45). Petitioner did not file an appeal.

7

violation. Accordingly, Defendant is not entitled to relief as to Dixon.

 *b. Cason*

Defendant asserts the State committed a Brady violation by failing to disclose that Cason had negotiated a plea deal with the State for his assistance in this case and committed a Giglio violation for failing to correct Cason's deposition testimony that failed to acknowledge this plea deal. Defendant alleges this information is "newly discovered" in that his federal habeas attorney looked into Cason's situation after retrieving Dixon's arrest record. That attorney found that Cason filed a 3.850, upon which an evidentiary hearing was held in 2000, alleging that his counsel was ineffective and that he felt his plea agreement had been violated after he received consecutive sentences. At that evidentiary hearing, Defendant asserts Cason's prosecutor testified that he was reluctant to waive death in his case because of the egregious nature of the crime, but only did so after Cason's attorney indicated that Cason would assist the State in its prosecution of Defendant. Defendant further asserts the prosecutor wanted Cason's help gathering evidence against him, since the prosecutor allegedly testified that he never intended to use Cason as a testifying witness.

This Court likewise finds this evidence does not qualify as newly discovered evidence. Again, because Defendant was incarcerated with Cason, he knew Cason had pending criminal charges. Moreover, Defendant acknowledges that by October 12, 1993, the State had informed the defense that they intended to use Cason in the prosecution of both Defendant's cases.

Additionally, Defendant admits that his trial attorney deposed Cason on March 9, 1994, during which Cason admitted to talking to the State about

8

> what Defendant had said and that he pled guilty in exchange for the State not seeking the death penalty. Considering all that the parties knew prior to Defendant's plea, this Court finds that Defendant's attorneys could have easily requested the records from Cason's case regarding this plea and kept abreast of the case's ongoings. Thus, because this information could have been discovered with the exercise of due diligence before Defendant's plea and certainly before 2016, the claim meets no exception to the time limitation of Rule 3.850 and is untimely. Again, this Court notes Defendant also raised this same claim within a Rule 3.851 motion in his other case of 16-1993-CF-0[5]394-AXXX-MA, which this Court summarily denied on this basis, and the Florida Supreme Court affirmed that denial. Thomas v. State, 260 So. 3d 226, 227 (Fla. 2018).
>
> Additionally, this Court finds this evidence was equally accessible to the State and defense and could have been obtained by the defense using due diligence. As such, this Court finds there can be no Brady violation. See Freeman, 761 So. 2d at 1062. Lastly, because Defendant did not proceed to trial, there is no probability this evidence may have affected the judgment of the jury as required to fulfill a Giglio violation. Accordingly, Defendant is not entitled to relief as to Cason.

See Thomas, No. 1993-CF-5393 (Mar. 25, 2019).[9]

---

[9] For ease of reference, the Court attaches a copy of the state court's order as an exhibit.

9

### III. Analysis

#### a. One-Year Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended 28 U.S.C. § 2244 by adding the following subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is

> pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In the instant case, Petitioner contends that his Petition is timely filed under either subsection B (the State's alleged failure to disclose information was an impediment) or subsection D (the factual predicate of the claim could not have been discovered earlier through the exercise of due diligence). See Doc. 1 at 28; Doc. 2 at 2-4.[10] According to Petitioner, his federal habeas counsel appointed to represent him in the case involving the murder of his wife, "came upon a document [on June 9, 2016,] that when compared to Mr. Dixon's testimony in his deposition suggested that there was a problem with Mr. Dixon's testimony." Doc. 2 at 2-3. The document and further investigation suggested that "Dixon's testimony did not match" his criminal history "as to whether he had faced state court charges." Id. at 16. This information led Petitioner "to question the accuracy of the State's representations and question

---

[10] Petitioner does not contend that his Petition is timely filed under subsection A (the date on which his judgment became final). Petitioner was sentenced to life imprisonment on July 22, 1994, and he did not take a direct appeal. Thus, his judgment and sentence became final after the expiration of the time in which he had to file a direct appeal, which fell on Monday, August 22, 1994 (the thirtieth day fell on Sunday, so the Court uses the following business day). See Fla. R. App. P. 9.140(b)(3). Because Petitioner's conviction and sentence became final prior to the effective date of the AEDPA (April 24, 1996), Petitioner had one year from the effective date to file a federal habeas petition. See Wilcox v. Fla. Dep't of Corr., 158 F.3d 1209, 1211 (11th Cir. 1998). Thus, Petitioner's deadline to file a federal habeas petition was April 24, 1997. He did not file the instant Petition until more than 20 years later on June 9, 2017.

11

whether favorable information had been withheld." Id. at 3. Petitioner argues that the state failed to disclose "critical information that would have revealed that 1) Dixon's testimony had been materially inaccurate, that he had not been truthful and that his credibility could have been damaged if not destroyed; 2) Dixon did stand to gain from his testimony, and most certainly helped his good friend Cason avoid a death sentence; and 3) Cason was a state agent at the time that Dixon claimed he encourage[d] [Petitioner] to talk in front of Dixon and confess which would have been a basis to preclude both Cason and Dixon from testifying." Doc. 1 at 10. According to Petitioner, he "would not have pled guilty had he known of the undisclosed favorable information and known that he had [a] basis for challenging his conviction on the charge that he murdered his ex-wife." Id. He argues that these failures affecting his conviction in the wife-murder case also affected his decision to plead guilty in the mother-murder case. See Doc. 1 at 7 (alleging that counsel "discover[ed] information that not only shows the State withheld favorable evidence from [Petitioner] in the prosecution that led to his death sentence, but also shows that the withheld information was favorable to [Petitioner] as to his prosecution for the first degree murder of his mother").

Upon due consideration, the Court finds that Petitioner could have, through the exercise of due diligence, discovered this information well before 2016. See 28 U.S.C. § 2244(d)(1)(D). And no "State action" prevented him from

12

timely filing. See 28 U.S.C. § 2244(d)(1)(B). Because Petitioner did not file this case within one year of any of the triggering dates in 28 U.S.C. § 2244(d)(1), his Petition is untimely. Petitioner fails to show any reason why the dictates of the one-year limitations period should not be imposed upon him. Thus, the Petition is due to be dismissed with prejudice as untimely filed.

### b. Exhaustion

Even if this case were timely filed, the claim raised in the Petition is procedurally barred. Petitioner did not fully exhaust his claim as he did not appeal the trial court's denial of his Rule 3.850 motion. Thus, he failed to give the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."[11] O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see Powell v. Allen, 602 F.3d 1263, 1269 (11th Cir. 2010) ("[T]o properly exhaust a claim, the petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." (internal quotation marks and alteration omitted)). Therefore, the claim is procedurally barred. Petitioner has shown neither cause nor prejudice resulting from the

---

[11] Although Petitioner appealed the trial court's denial of his Rule 3.851 motion raising this claim in the wife-murder case, he did not appeal the denial of his Rule 3.850 motion raising this claim in the mother-murder case. Thus, while the Florida Supreme Court ruled on the claim in the wife-murder case, see Thomas, 260 So. 3d at 227, Petitioner did not present the claim to the Florida Supreme Court in connection with his conviction in the mother-murder case.

procedural bar, and he fails to demonstrate a fundamental miscarriage of justice would result if this claim were not addressed on the merits. As such, in addition to being untimely, the claim is procedurally barred on federal habeas review.

Accordingly, it is

**ORDERED**:

1. This case is **DISMISSED with prejudice**.

2. If Petitioner appeals, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[12]

---

[12] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

3. The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close this case.

**DONE AND ORDERED** in Jacksonville, Florida, this 14th day of August, 2025.



TIMOTHY J. CORRIGAN
Senior United States District Judge

Attachment:
    March 25, 2019 state court order

JAX-3 8/5
c:
Counsel of Record